UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALCOLM BUTLER,

                Petitioner,

v.                                              CASE NO. 04-CV-70359-DT
                                                HONORABLE GEORGE CARAM STEEH
PAUL RENICO,

                Respondent.
_____/

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Pending before the Court is petitioner Malcolm Butler's application for the writ of habeas

corpus under 28 U.S.C. § 2254.  The habeas petition attacks Petitioner's state convictions for

first-degree murder, MICH. COMP. LAWS § 750.316, and possession of a firearm during the

commission of a felony, MICH. COMP. LAWS § 750.227b.  Respondent opposes the petition.  The

Court has concluded for reasons given below that the habeas petition must be denied.

### I.  Background

Petitioner was convicted in Wayne County Circuit Court on February 17, 2000.  The

murder and felony firearm convictions arose from the fatal shooting of Jadeison (Jay) Ladouceur

during a carjacking in Detroit, Michigan.  The evidence at trial, as summarized by the Michigan

Court of Appeals, established that

> Ladouceur was killed . . . while he was washing his 1996 Chevy Impala.  Several
> eyewitnesses testified that [Petitioner] struggled with Jay for the car and shot Jay
> in the head. [Petitioner] dragged Jay's body out of the car and drove away in the
> Impala.  Witnesses testified that [Petitioner] was Jay's only assailant.  There was
> evidence that [Petitioner] had been driving a brown car that was left at the scene
> of the shooting, and that he took the tires from the Impala to the house of his
> cousin, Clee Jackson, where they were later recovered by the police.  There was

> also evidence that [Petitioner] carried a gun, that he told his cousin that he had
> shot someone, and that he was seen with blood on his clothing after the shooting.

*People v. Butler*, No. 226624, at 1 (Mich. Ct. App. June 28, 2002).

The primary issue at trial was identification.  The prosecutor's theory was that Petitioner was the sole shooter.  Petitioner's defense was that Clee Jackson must have been the shooter because he fit the description of the perpetrator, incriminating evidence was found in his home, and the stripped car was located a short distance from his home.

On March 7, 2000, the trial court sentenced Petitioner to two years in prison for the felony firearm conviction and to a subsequent term of life imprisonment, without the possibility of parole, for the murder conviction.  Petitioner subsequently moved for a new trial based on newly discovered evidence, which consisted of a letter written by Clee Jackson to Petitioner while Petitioner was a pretrial detainee in jail.  The letter implies that Petitioner was framed and that Clee Jackson and his wife Johslin lied about Petitioner's involvement in the crime.

Petitioner also argued in his motion for new trial that the identification testimony of four eyewitnesses was suspect because the witnesses identified Petitioner for the first time at trial.  In addition, Petitioner argued that the prosecutor withheld exculpatory evidence about the eyewitnesses being unable to identify Petitioner before trial.

The trial court determined that Clee Jackson's letter was an insufficient basis on which to grant a new trial.  The court noted that the great weight of the evidence produced at trial established Petitioner's involvement in the crime even if Jackson were to testify consistently with statements in his letter.  The trial court also determined that the in-court identifications of Petitioner were based on the eyewitnesses observation of Petitioner at the time of the incident and that the alleged failure to disclose the witnesses inability to identify Petitioner before trial

2

did not deprive Petitioner of a fair trial.  Accordingly, the trial court denied Petitioner's motion

for new trial.

Petitioner subsequently appealed his convictions on the grounds that (1) defense counsel

failed to request a jury instruction on accomplice testimony, and the trial court failed to instruct

the jury on accomplice testimony; (2) the prosecutor withheld exculpatory identification

evidence, and defense counsel failed to move to suppress the identification testimony, (3) the

trial court erroneously denied his motion for new trial, which was based on newly discovered

evidence, and (4) the verdict was against the great weight of the evidence.  The Michigan Court

of Appeals was unpersuaded by these arguments and affirmed Petitioner's conviction.  *See id.*

Petitioner raised the same issues in the Michigan Supreme Court, which denied leave to appeal

on January 31, 2003.  *See People v. Butler*, 467 Mich. 953; 656 N.W.2d 527 (2003) (table).

Petitioner filed his habeas corpus petition through counsel on January 30, 2004.  The

grounds for relief, as stated in the supporting brief, are:

> I.   The prosecutor withheld exculpatory identification evidence from
>      Petitioner, where those witnesses were unable to identify Petitioner
>      during a previous lineup, and where the prosecution had each of
>      these witnesses make in-court identifications at trial in
>      contradiction to this withheld exculpatory viewing; and
>
>      Petitioner's trial counsel failed to move pretrial for suppression of
>      in-court identification of Petitioner or move for a mistrial when
>      this withheld exculpatory identification evidence was first
>      introduced at trial;
>
> II.  Petitioner's counsel failed to move [for a] mistrial when newly
>      discovered exculpatory evidence came to light during jury
>      deliberations, where such evidence is an admission of guilt and/or
>      evidence of perjury by the prosecution's witness, Clee Jackson;
>      and
>
> III. Petitioner's counsel did not request the cautionary accomplice

3

> instruction for witness, Clee Jackson, where this witness testified,
> at a minimum, to his role as an accessory after the fact, all physical
> evidence pointed to him as the actual perpetrator, and where he fit
> the physical description of the perpetrator, as given by the
> eyewitnesses.

Respondent urges the Court to deny the habeas petition because the state court's decision

rejecting Petitioner's claims did not result in an objectively unreasonable application of clearly

established Supreme Court law.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's

adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court's

decision is an "unreasonable application of" clearly established federal law "if the state court

identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.  "Avoiding

these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even

require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of

the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*

opinion) (emphasis in original).

> Furthermore, state findings of fact are presumed to be correct unless the defendant
> can rebut the presumption by clear and convincing evidence.  28 U.S.C. §
> 2254(e)(1).  Finally, review is conducted in light of the law as it existed at the
> time of the final state court decision, *Teague v. Lane,* 489 U.S. 288 (1989), unless
> an intervening constitutional decision announces a 'watershed' rule of criminal
> law with implications for the fundamental fairness of the trial proceeding.
> *Caspari v. Bohlen,* 510 U.S. 383, 396 (1994).

*Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, __ U.S. __, 125 S. Ct. 1670

(2005).

### III.  Discussion

### A.  Withholding Evidence - *Brady v. Maryland*

Petitioner alleges that the prosecutor withheld exculpatory identification evidence from

him.  The exculpatory evidence consisted of the eyewitnesses failure to identify Petitioner before

trial during a lineup and photographic display.

The Michigan Court of Appeals acknowledged, but did not address, Petitioner's claim

about the prosecutor.  The trial court, however, addressed the issue when ruling on Petitioner's

motion for new trial.  The trial court concluded that the prosecution's alleged failure to disclose

the eyewitnesses inability to identify Petitioner before trial did not deprive Petitioner of a fair

trial.

The Supreme Court held in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), that "suppression

by the prosecution of evidence favorable to an accused upon request violates due process where

the evidence is material either to guilt or to punishment, irrespective of the good faith or bad

faith of the prosecution."  A true *Brady* violation has three components:  "The evidence at issue

must be favorable to the accused, either because it is exculpatory, or because it is impeaching;

that evidence must have been suppressed by the State, either willfully or inadvertently; and

prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "[F]avorable

evidence is material, and constitutional error results from its suppression by the government, 'if

there is a reasonable probability that, had the evidence been disclosed to the defense, the result

of the proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)

(quoting *United States v. Bagley*, 473 U.S. 667, 682, 685 (1985)).

## 1.  The Facts

There were four eyewitnesses who identified Petitioner for the first time at trial as the

man who shot Jay Ladouceur:  Anne Lynn, Daniel Clark, Tyrone Hawkins, and Lomell Hodges.

Anne Lynn attended a line-up, but failed to identify Petitioner in the line-up.  Lynn explained at

trial that she informed the police that someone other than Petitioner looked like the shooter, but

was not him.  Lynn also admitted to being informed by the prosecutor that the police had

arrested someone for the murder and that the prosecutor needed her to identify the man.  Lynn

explained, however, that the prosecutor had said, "If it's not him, . . . get on the stand and say

that he was not the shooter."  She claimed that, if Petitioner were not the shooter, she would not

want him going to jail for a crime he did not commit.  She also claimed that her conversation

with the prosecutor did not have anything to do with her memory of the shooter.  (Tr. Feb. 14,

2000, at 187-90, 197-99.)


Daniel Clark testified that the police showed him photographs and that he did not identify

anyone in the photographs.  He admitted that, before he came to court, the police told him that

they had caught the shooter.  He claimed, however, that neither the photographs, nor anything

the police said, caused him to identify Petitioner at trial.  He asserted that he identified Petitioner

because he remembered him as the shooter.  (*Id.* at 210, 213-15.)

Following Clark's testimony, defense counsel stated that a discovery order had been

issued and that he would like to see the photographs, which Clark had mentioned during his

testimony.  The prosecutor responded that he had been unaware of the photographic show-up.

He offered to contact Clark and the officer who had spoken with Clark to get more information.

(*Id.* at 218-19.)

On the following day, Tyrone Hawkins identified Petitioner as the person who shot Jay

Ladouceur.  Hawkins testified that he was not shown any photographs before trial.  He was able

to identify Petitioner because Petitioner used to visit one of Hawkins' acquaintances.  Hawkins

denied identifying Petitioner as a result of being told that someone was on trial for the murder of

his friend or because of where Petitioner was seated in the courtroom.  He also denied being

threatened or forced to identify Petitioner.  He claimed that his identification was based not on

anyone's suggestion, but on whom he saw at the time of the shooting.  (Tr. Feb. 15, 2000, at 150-

52, 162, 167-70.)

Lomell Hodges identified Petitioner as the person who shot his friend Jay and stole Jay's

car.  Hodges did not speak with any law enforcement officials until about a week before trial,

and he apparently did not view a line-up or any photographs.  He testified that no one put words

in his mouth and that he had no reason to lie.  (*Id.* at 194-95, 199-200, 203.)

Investigator Dale Collins subsequently testified that he brought an array of eight or nine

pictures, including pictures of Petitioner and Clee Jackson, to the neighborhood where Jay

Ladouceur was murdered.  Accordingly to Collins, no one, including Tyrone Hawkins, identified

Petitioner as the perpetrator of the crimes.  (Tr. Feb. 16, 2000, at 37, 42, 45-47.)

## 2.  Analysis

Evidence that eyewitnesses failed to identify Petitioner before trial was favorable

evidence because it had a tendency to undermine the eyewitnesses in-court identifications of

Petitioner.  The "disclosure obligation [set forth in *Brady*] includes evidence that could be used

to impeach the credibility of a witness."  *Schledwitz v. United States*, 169 F.3d 1003, 1011 (6th

Cir. 1999).

The Court will assume, moreover, for purposes of this case, that the prosecutor initially

suppressed the evidence.  Although the prosecutor apparently was unaware that the police

showed photographs to witnesses, the investigators knowledge that photographs were shown to

eyewitnesses may be imputed to the prosecutor.  *Strickler*, 527 U.S. at 280-81 (citing *Kyles v.*

*Whitley*, 514 U.S. at 437-38).  Nevertheless, testimony concerning the witnesses failure to make

pretrial identifications was elicited during trial, and *Brady* applies only to a complete failure to

disclose, not tardy disclosure during trial, unless the defendant has been prejudiced by the delay.

*Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998).

Petitioner was not prejudiced by the delayed disclosure, because the exculpatory

evidence was brought to the jury's attention and because his attorney had an opportunity to

cross-examine the eyewitnesses about their identification testimony.  Defense counsel also

pursued the matter on cross-examination of investigator Dale Collins, and in his closing

argument, defense counsel reminded the jury that the witnesses were told by the police before

coming to court that the police had caught the shooter.  Defense counsel argued that the

8

identification testimony fell short of the standard of proof in criminal cases and that the

eyewitnesses were predisposed to identify Petitioner because they came to court thinking that the

person charged with the crime committed it.  Counsel further argued that a reasonable doubt

existed because some witnesses were unable to pick Petitioner out of an array of pictures the day

after the murder.  (Tr. Feb. 16, 2000, at 112-18.)

There is not a reasonable probability that, had the disputed evidence been disclosed to the

defense before trial, the result of the trial would have been different.  Therefore, Petitioner has

failed to establish all three elements of a *Brady* claim.  He has not shown that the prosecutor

withheld "material evidence," as that phrase is defined in *Kyles*, and that prejudice ensued.

Thus, the trial court's rejection of Petitioner's *Brady* claim was not objectively unreasonable.

### B.  Failure to Move to Suppress the In-Court Identifications

Petitioner alleges that defense counsel should have moved to suppress the eyewitnesses

in-court identifications of him because (1) the identifications at trial were tantamount to

suggestive show-ups, which created a substantial likelihood of misidentification, and (2) none of

the witnesses identified him before trial.  The Michigan Court of Appeals concluded on review

of this claim that defense counsel was not ineffective for failing to move for suppression of the

in-court identifications of Petitioner.  The court of appeals observed that no witness identified

anyone other than Petitioner as the perpetrator and that the failure to identify Petitioner before

trial was not a basis for rendering inadmissible the subsequent in-court identifications of him.


To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate

that the state court's conclusion was contrary to, or an unreasonable application of, *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984).  *See Williams v. Taylor*, 529 U.S. at 391 (explaining that

*Strickland* qualifies as "clearly established Federal law" under 28 U.S.C. § 2254(d)(1) for

purposes of ineffective-assistance-of-counsel claims).  The Supreme Court held in *Strickland*

that an attorney is constitutionally ineffective if the attorney's performance was deficient and the

deficient performance prejudiced the defense.  *See id*. at 687.  The first prong of this test requires

showing that defense "counsel's representation fell below an objective standard of

reasonableness."  *Id*. at 688.  The second prong requires demonstrating "a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been

different."  *Id*. at 694.

Petitioner is not alleging that an impermissibly suggestive pretrial identification gave rise

to a substantial likelihood of irreparable misidentification.  *Cf. Thigpen v. Cory*, 804 F.2d 893,

895 (6th Cir. 1986) ("A conviction based on identification testimony following pretrial

identification violates the defendant's constitutional right to due process whenever the pretrial

identification procedure is so 'impermissibly suggestive as to give rise to a very substantial

likelihood of irreparable misidentification.'") (quoting *Simmons v. United States*, 390 U.S. 377,

384 (1968)).  There was no pretrial identification in this case.  Anne Lynn viewed a line-up, and

Daniel Clark and Tyrone Hawkins viewed photographs.  None of these witnesses were able to

identify Petitioner before trial.

Although the witnesses failure to identify Petitioner before trial tended to undermine the

reliability of their identifications of Petitioner at trial, it was not fatal and did not require

exclusion of the in-court identifications.  *Howard v. Bouchard*, 405 F.3d 459, 484 (6th Cir.

2005); *United States v. Causey*, 834 F.2d 1277, 1286 (6th Cir. 1987) (quoting *United States v.*

*Toney*, 440 F.2d 590, 591 (6th Cir. 1971)). "The prior failure of [a] witness to identify the defendant goes only to the weight to be accorded testimony, not its admissibility." *Causey*, 834 F.2d at 1286.

Furthermore, although defense counsel did not move to suppress the in-court identifications, he did attack the eyewitnesses identification testimony, and he implied in his closing argument that the testimony was not credible. A motion to suppress the identifications likely would not have succeeded in any event, because Anne Lynn and Daniel Clark testified that they saw the shooter's face from across the street, and they were sure of their identifications. Tyrone Hawkins claimed to know Petitioner from the neighborhood. None of the eyewitnesses stated that they were influenced by improper factors, and the trial court determined during post-convictions proceedings that the in-court identifications were based on the eyewitnesses observation of Petitioner at the time of the incident.

Even if the in-court identifications of Lynn, Clark, Hawkins, and Hodges had been suppressed, Clee Jackson and Johslin Jackson implicated Petitioner in the crimes at trial and in their statements to the police. The Court concludes that defense counsel's performance was not deficient and that the alleged deficiency of failing to move to suppress in-court identifications did not prejudice the defense. Therefore, the state court's rejection of Petitioner's ineffectiveness claim was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court in *Strickland*.

### C. New Evidence

The second habeas claim alleges that defense counsel should have moved for a mistrial

when newly discovered exculpatory evidence came to light. The new evidence was Clee

Jackson's letter to Petitioner while Petitioner was confined in jail.[1] Petitioner contends that the

---

[1] The letter, which is not dated, reads:

What's up M.D., you cain't (sic) write . . . , what up with that, you know I
have you always have, your blood and nothing can change that fact. Dog I'm
sorry my wife [Johslin Jackson] told those lies, but she was scared man. I went
along, because they already had her statement before my eyes. But she got her
truth - lies mixed, because goose and Waldo well Waldo, had the blood, I asked
her why - she said you came back bye (sic), She was scared, and didn't know
what to say. I couldn't let my wife be locked up, other wises (sic) she'd lie on
anybody to save her self, she might have said something stupid and they might
have listened, then we all be do life. But they know you're being framed, the girl
saw your picture on T.V. and anybody can be smart enough to know that the
accused sets in the front of the Judge, I told her should've just [indecipherable]
but she thought they'd come bye (sic) in the night, and shoot up the house, Johslin
ain't like us man, she just don't know.

She misses you, just as much as me, and I think about your ass, day -
night, me and big tim talk about you every day man. I said you'd be out around
March - April but I don't know what you think of me or us for that matter, I don't
know if you hate me want to kill me or what. But I do know this, beleave (sic) it
or not, even if you was guilty, I'd go down my self, if it didn't have to bring no
one else down with me. I love you man and you running me crazy. If you need
me money whatever man I hear I'll never turn on you, regardless of what you
think I'm hear (sic).

So I'll have a phone, and you can call. It will be a three way, so I will send the #.

Dogs like it or not when you come home hopefully together we'll bring
the noise.

Signed C. Jackson, Sr.

[indecipherable] Who what up on the loot.

P.S. If god willing I'll be hear (sic) when you come home you know I'm sick and
I got a couple beef to so I love ya.

See you then Cousin.

12

letter was an admission of guilt and evidence of perjury.

Petitioner did not raise this claim in state court.   He styled the claim in terms of the trial

court's erroneous decision to deny his motion for new trial.  Although the claim is unexhausted,

it lacks merit, and a federal district court may deny a petition for writ of habeas corpus despite

the failure to exhaust state remedies for the claim.  28 U.S.C. § 2254(b)(2).

Because neither the trial court nor the Michigan Court of Appeals addressed Petitioner's

claim about defense counsel not moving for a mistrial upon discovering Clee Jackson's letter,

this Court must review Petitioner's claim *de novo*.  *Howard*, 405 F.3d at 467.  As previously

explained, to show a violation of the right to effective assistance of counsel, Petitioner must

establish that his attorney's performance was deficient and that the deficient performance

prejudiced the defense.  *Strickland*, 466 U.S. at 687.

Clee Jackson's letter was postmarked November 12, 1999, and received in the Wayne

County Jail on November 17, 1999.  Petitioner alleges that he did not receive the letter until

February 16, 2000, after the jury had begun deliberating.  On the following morning, after the

jury reached its verdict, defense counsel stated on the record that Petitioner had given him the

letter that morning.  Defense counsel stated that it was too late to re-open the proofs and that all

he could do was inform the court and the prosecutor that he received the letter.  (Tr. Feb. 17,

2000, at 5-6.)  Defense counsel subsequently stated in an affidavit that he would have used the

letter to impeach Clee Jackson during cross-examination.

_____

Cortez –– Jessie trying to write you to[o] but I cain't (sic) write all that[.] [Y]ou won't
read it all.

*See* Exh. #2, Pet. for Writ of Habeas Corpus.

The record suggests that defense counsel's failure to move for a mistrial was a strategic decision, for counsel stated that the letter included information, which the prosecution could have used to support its theory.[2]   An attorney's strategic choice made after less than a complete investigation is reasonable precisely to the extent that reasonable professional judgments support limitations on investigation.  *Strickland*, 466 U.S. at 691.  Defense counsel's choice not to pursue the matter was reasonable because the letter was not an admission of perjury.  It predated the trial and it appears to refer to Clee and Johslin Jackson's statements to the police, not to any testimony.

Even assuming that the letter could have been admitted in evidence as an admission of Clee Jackson's guilt, the contention that it was newly discovered evidence is suspicious.  The letter was postmarked and received in the county jail in November of 1999, yet Petitioner informed defense counsel that he received it from Clee Jackson on February 16, 2000.

Furthermore, as explained by the Michigan Court of Appeals:

Jackson's letter stating that he and his wife lied to police is not new evidence. The question of Jackson's credibility was already before the jury.  Jackson testified that he lied at [Petitioner's] preliminary examination, he recanted parts of his earlier statement to the police, and he said that he went along with his wife's statement.  Jackson also agreed with defense counsel that if he had to choose between helping [Petitioner] or avoiding jail for his part in possessing the tires from Jay's car, he would choose to avoid jail.  Jackson's wife testified that she gave a statement to the police because she knew that she and her husband were in trouble, and that the statement got them out of trouble.  Jackson's wife claimed not to remember giving most of the information contained in the police statement.

---

[2]  Defense counsel did not elaborate on this conclusion, but the Court notes that the letter mentions the blood on Waldo.  Waldo was one of the men who allegedly helped Petitioner bring tires and rims into the Jacksons' home after the carjacking.  Johslin Jackson testified that Petitioner and Waldo had blood on their clothing at the time.  (Tr. Feb. 15, 2000, at 122, 125-26.)

14

*Butler*, Mich. Ct. App. No. 226624, at 3.

Finally, there is not a reasonable probability that the outcome of the trial would have been different if defense counsel had moved for a mistrial.  Petitioner's appellate attorney raised the same issue in a motion for new trial, which the trial court denied.  The trial court stated that the evidence produced at trial established Petitioner's involvement in the crime even if Jackson would have testified consistently with statements in his letter.  This Court concludes that defense counsel's failure to move for a mistrial was not indicative of deficient performance and that the alleged deficiency did not prejudice the defense.

### D.  Failure to Request an Instruction on Accomplice Testimony

Petitioner's final claim is that his trial attorney was ineffective for failing to  request a jury instruction on accomplice testimony.  Petitioner maintains that the physical evidence pointed to Clee Jackson as the actual perpetrator and that, at a minimum, Jackson was an accessory after the fact.  The Michigan Court of Appeals found no merit in this claim because the evidence did not support an instruction on accomplice testimony.

In Michigan, a person is considered an accomplice if the person could be charged with the same offense as the accused is charged.  *People v. Threlkeld*, 47 Mich. App. 691, 696; 209 N.W.2d 852, 855 (1973).  Eyewitnesses testified at Petitioner's trial that just one man chased and shot the victim.  Neither the prosecutor nor Petitioner maintained that the gunman was aided and abetted in the carjacking and murder.  The prosecutor claimed that Petitioner was the sole shooter, and Petitioner argued that there was a reasonable doubt about the identity of the shooter.  A jury instruction on accomplice testimony would have been inconsistent with Petitioner's defense that he was not involved in the crime.

While there was some evidence that Clee Jackson sold stolen car parts and knew that Petitioner intended to acquire some tire rims, there was no evidence that Clee Jackson assisted Petitioner in the charged crime of first-degree murder.  Thus, defense counsel was not ineffective for failing to request a jury instruction on accomplice testimony, and the state court's conclusion that Petitioner's claim lacked merit was not contrary to, or an unreasonable application of, *Strickland*.

### IV.  Conclusion

For all the reasons given above, the Court concludes that the state courts' decisions were not contrary to, or unreasonable applications of, Supreme Court precedent nor unreasonable applications of the facts.  Therefore, the application for a writ of habeas corpus [Doc. #1, Jan. 30, 2004] is DENIED.

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  June 14, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on June 14, 2005, by electronic and/or ordinary mail.

s/Josephine Chaffee
Secretary/Deputy Clerk